**TEXAS & P. RY. CO. v. UNITED STATES.**

**No. K-148.**

Court of Claims.

Oct. 20, 1931.

Chester A. Gwinn, of Washington, D. C. (Humphreys & Gwinn, of Washington, D. C., on the brief), for plaintiff.

Montgomery B. Angell, of New York City, amicus curiæ.

Charles B. Rugg, Asst. Atty. Gen. (Joseph H. Sheppard, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

On the first issue the plaintiff contends that the amount of $2,061,082.63 received from the United States under the provisions of section 209 of the Transportation Act of 1920 to make good an operating deficit for the guaranty period was strictly a bounty or a subsidy from the sovereign to the railroad and, as such, was free from taxation by the United States. We are unable to agree with this contention. This question was before the United States Board of Tax Appeals in Gulf, Mobile & Northern Railroad Co. et al., 22 B. T. A. 233, wherein the board in a well-reasoned opinion reached the conclusion that such payments made by the United States under section 209 of the Transportation Act of 1920 constituted taxable income. We agree with the reasoning of the board and the conclusion reached in the above-mentioned case.

The plaintiff relies upon the case of Edwards v. Cuba Railroad Co., 268 U. S. 628, 45 S. Ct. 614, 69 L. Ed. 1124, but we think that case is not in point. The payment made under section 209 of the Transportation Act was not a contribution to capital nor was it strictly and correctly a bounty or subsidy as would be exempt from taxation. While there was no legal obligation on the part of the United States to make such payment to the railroads before section 209 of the Transportation Act became law, the government was bound by legal obligation after the railroads had accepted the terms of this statute to make the necessary payments and the railroads were equally bound to pay certain excess earnings over the specified amounts to the government. There was mutuality of arrangement and mutuality of benefit as well as of obligation. The whole matter of such payments grew out of the control and operation of most of the railroads in the country by the United States, and the purpose of the act providing for such payments was to guarantee to the railroads that for a period following the release of railroads from federal control their operating income, of which their owners and security holders received the benefit, would not be less than their average railway operating income for the test period of three years prior to federal control ending June 30, 1917. It was the railway operating income in a specifically restricted sense which was guaranteed. The railroads, in order to receive the guaranty payments under section 209, were required to accept in writing all provisions of that section within a certain time. One of these conditions was, should the railway operating income exceed a certain amount, the excess would be paid to the government. This constituted a contractual agreement between the carrier and the government, and it could not be ascertained until an accounting had been had whether the government would pay the railroad or whether the railroad would pay the government. This feature of the case takes away any basis for holding that the payments by the government were pure gifts or subsidies to the railroads. Although Congress was impelled by no legal obligation in enacting this legislation requiring the government to make these payments, it seems clear that the government took into consideration the benefits to be derived by the people of the United States and that there were obligations of "an equitable, moral, and honorary nature" on the part of the government existing on account of the condition of the railway systems immediately following federal control and largely as a result thereof. United States v. Realty Co. et al., 163 U. S. 427, 16 S. Ct. 1120, 41 L. Ed. 215. Such an obligation may well be said to take the place of a legal obligation to such an extent as to take payments under section 209 of the Transportation Act out of the class of pure gratuities or subsidies. If the payments by the government to the railroads constitute gifts or gratuities free from tax, the question naturally arises as to the nature of payments made by the railroad to the government where they had excess income.

It would be a strained construction to say that amounts paid by the railroads to the government where their income exceeded certain amounts were gifts by them to the government. We think the railroads were not making voluntary contributions to the federal government, and certainly they did not so consider it. Nor do we consider that the government was making gifts or voluntary contributions to the railroads where their operating income did not equal the guaranteed amount. As was well stated by the United States Board of Tax Appeals in Gulf, Mobile & Northern Railroad Co. et al., supra: "The payments by the Government, however, were dependent upon the operation of the railroad, that is, the use of both capital and labor. The payments were not received for the guaranty period unless the railroads were in operation during that period, and then only in the event that their operating income was less than the guaranteed amount, and we cannot overlook the fact that it was railway operating income which was guaranteed and made up. The Government derived a substantial benefit from the payments. It received consideration from the substantial good obtained for or expected to be obtained for the people as a whole on account of the more efficient operation of the railroads and the further establishment of their credit."

For the foregoing reasons and for additional reasons fully stated and discussed by the United States Board of Tax Appeals in Gulf, Mobile & Northern Railroad Co. et al., supra; Missouri Pacific Railroad Co., 22 B. T. A. 267; Kansas City Southern Railway Co. and Affiliated Companies, 22 B. T. A. 949; Galveston Wharf Co., 22 B. T. A. 1312; and Chicago & North Western Railway Co., 22 B. T. A. 1407, we are of opinion that the Commissioner of Internal Revenue correctly held that the amounts received by the plaintiff from the government under the provisions of section 209 of the Transportation Act constituted income for the year 1920.

■ The next issue concerns the question whether plaintiff was required to include in income for 1920 an amount representing the cost of constructing certain spur tracks which were paid for by the person or persons for whose benefit they were constructed. In the course of plaintiff's business as a carrier it is customary to construct spur tracks, side tracks, culverts, etc., at the request and for the benefit of persons and corporations along its right of way. The railroad furnishes the labor and materials for such construction and charges the actual cost thereof to the person for whose benefit the work was done and is reimbursed therefor by such beneficiary. To so much of such construction as is on plaintiff's right of way it acquires title and to that extent its capital account is increased. The actual cost of such improvements is, under a system of accounting prescribed by the Interstate Commerce Commission, required to be credited to profit and loss account No. 606, entitled "Donations."

We are of opinion that these transactions did not give rise to the receipt of taxable income by the plaintiff and that the defendant erroneously included in plaintiff's income for 1920 the amount of $17,707.97 on account thereof. Liberty Light & Power Co., 4 B. T. A. 155; Great Northern Railway Co., 8 B. T. A. 225.

■ The last question is whether a payment of $4,143.28 made by plaintiff to the Association of Railway Executives, as set forth in finding 6, was an ordinary and necessary business expense allowable as a deduction from gross income for 1920. The Commissioner of Internal Revenue allowed a deduction of $1,553.73 of the total amount paid. This left a balance of $2,589.55. Plaintiff contends that this was an ordinary and necessary business expense and should be allowed as a deduction from gross income, while the defendant takes the position that the portion of the contribution disallowed falls within art. 562 of regulations 45 providing that sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses, are not deductible from gross income.

We are of opinion that the nature of the contribution in question and the circumstances under which it was made bring it within the field of ordinary and necessary business expense and that it should be allowed as a deduction from gross income. Great Northern Railway Co., supra; Texas & Pacific Ry. Co., 9 B. T. A. 365; Western Maryland Ry. Co., 12 B. T. A. 889; Los Angeles & Salt Lake Railroad Co., 18 B. T. A. 168; and Norfolk Southern Railroad Co., 22 B. T. A. 302.

Judgment will be entered in favor of plaintiff for $1,962.09, with interest thereon at 6 per cent. per annum, as provided by law. It is so ordered.